IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| V. | * | |
| LEE E. ELLIS (01); | * | NO: 4:13CR00131-03, 04 SWW |
| SANDRA J. ELLIS (02); | * | |
| JAMES P. WESTLAKE (03); and | * | |
| BARBARA L. WESTLAKE (04) | * | |

**ORDER**

The Court held a pretrial hearing in this case on December 14, 2015 and heard arguments regarding several pending matters, including motions to quash by Defendants Sandra J. Ellis [ECF Nos. 92, 93] and Lee E. Ellis [ECF Nos. 94, 95], motions to sever by Defendants James P. Westlake [ECF No. 89] and Barbara L. Westlake [ECF No. 91], and the United States' responses opposing said motions [ECF Nos. 97, 100]. From the bench, the Court denied the motion to sever and held the motion to quash in abeyance, pending the government's motion for statutory use immunity. This order reduces those rulings to writing.[1]

**I. Background**

Defendants in this case are Lee E. Ellis ("Mr. Ellis") and Sandra J. Ellis ("Mrs. Ellis"), who are husband and wife, and James P. Westlake ("Mr. Westlake") and Barbara L. Westlake ("Mrs. Westlake"), who are husband and wife. Count I of the indictment charges Mr. Ellis, aided and abetted by Mrs. Ellis and Mr. and Mrs. Westlake, with theft of government property,

---

[1] From the bench, the Court also granted in part and denied in part Barbara L. Westlake's motion *in limine* and granted James P. Westlake's motion for a continuance. The Court will set a new trial date in a separate order granting the motion to continue.

in violation of 18 U.S.C. § 641.  Counts II and III charge Mr. Ellis with concealment of a material fact, in violation of 42 U.S.C. § 408(a)(4), and knowingly making a false statement, in violation of 28 U.S.C. § 1001.

The indictment charges that Mr. Ellis began receiving social security disability benefits in 1996 and that he obtained a commercial driver's license in 2000 and worked as a truck driver for Mr. Westlake's company, Mid-West Wood, Inc. ("Mid-West"), between October 2009 and September 2011.  It is further alleged that Mrs. Westlake, who served as a bookkeeper for Mid-West, drafted payroll checks for work performed by Mr. Ellis but made the checks payable to Mrs. Ellis, who did not perform work for Mid-West.

On November 6, 2014, the Ellises pled guilty to all counts against them, and the Court sentenced both defendants to serve three years' probation.   The remaining charges against the Westlakes remain for trial, which was scheduled to begin December 15, 2015.

## II.  Motions to Quash

Mr. and Mrs. Ellis have filed separate motions to quash subpoenas, which require their attendance and testimony at the Westlakes' trial.  The Ellises state that if they are called to testify, they will assert their Fifth Amendment right to avoid self-incrimination because their testimony could subject them to further criminal charges under 18 U.S.C. § 641.

The indictment in this case charges the Ellises with offenses under § 641 based on conducted that they committed between 2009 and 2011.  The United States actually believes that the Ellises' offenses began before 2009, but it lacked evidence to bring charges for earlier

conduct.[2]  The Ellises argue that a violation of § 641 is a continuing offense, which makes them subject to a second prosecution for conduct committed prior to 2009.

The offense proscribed under § 641 has a five-year statute of limitations, *see* 18 U.S.C. § 3282(a), and a limitations period normally begins to run as soon as each element of the crime has occurred. *See Toussie v. United States*, 397 U.S. 112, 125, 90 S. Ct. 858, 865 (1970). But in the case of a continuing offense, the crime is not complete, for statute of limitation purposes, so long as the proscribed conduct continues. *See id.* Here, the Ellises' offenses ended in March 2012, and they argue that the statute of limitations for a second prosecution will expire in March 2017.

The United States agrees that a violation of § 641 is a continuing offense but argues that a second prosecution would violate the Double Jeopardy Clause, which protects against a second prosecution for the same offense after conviction. "If the . . . the statute prohibits a course of action, or a series of acts over time, then it is a continuous offense and any conviction or acquittal based on a portion of that course of action will bar prosecution on the remainder." *Harrell v. Israel*, 478 F. Supp. 752, 754-55 (E.D. Wis. 1979)(citing *Blockburger v. United States*, 284 U.S. 299, 302, 52 S.Ct. 180 (1932)).

---

[2]In response in opposition to the motions to quash, the United States reports:

> It is the United States' position that the offense actually began prior to 2009. However, there was some evidence that the United States could not obtain, specifically, load tickets prior to 2009 that were unavailable, thus, the United States charged only the conduct between 2009 and 2011.

ECF No. 97, at 2.

The Court finds that § 641 is a continuous offense,[3] and a second prosecution under the statute is barred. Where there can be no further incrimination, there is no basis for assertion of the privilege, and that principle applies to cases such as this, where the sentence has been fixed and the judgment of conviction has become final. *See Mitchell v. United States*, 526 U.S. 314, 326, 119 S. Ct. 1307 (1999).

In addition to asserting that they are subject to a second prosecution under § 641, the Ellises argue that it is likely that their testimony will reveal information that is incriminating and could subject them to prosecution for other crimes. The Ellises further argue that the Court should not force them to testify without statutory immunity, pursuant to 18 U.S.C. §§ 6001-6005, which would enable them to testify without fear of further prosecution. During the pretrial hearing, following an in camera conference with attorneys for Mr. and Mrs. Ellis, the Court ruled that the motions to quash would be granted absent a grant of use immunity. The United States then announced that it intends to apply to the Court for an order granting immunity. Accordingly, the motions to quash will be held in abeyance pending a decision on the anticipated application.

### III. Motions to Sever

---

[3] A crime is a continuing offense either when "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States*, 397 U.S. 112, 115 (1970). The Ellises' conduct involved the ongoing theft of Social Security funds between in or about October 2009 and September 2011 and is properly characterized as a continuing offense. *See United States v. Smith*, 373 F.3d 561, 564 (4th Cir.2004) (indictment charging defendant with single count of knowingly embezzling, stealing, purloining, and converting to his own use funds belonging to the SSA in violation of 18 U.S.C. § 641 could be charged as a continuing offense; specific conduct at issue, not reporting mother's death to embezzle government funds, was properly characterized as a continuing offense rather than a series of separate acts).

Previously, Mr. and Mrs. Westlake filed separate motions to sever, arguing that unless the case proceeds on separate trials, each would suffer prejudice by the admission of inculpatory statements made by the other. The United States responded that a written statement by Mrs. Westlake did not inculpate Mr. Westlake and that a portion of an oral statement by Mr. Westlake, which could inculpate Mrs. Westlake, would be redacted. By order entered February 19, 2015, the Court denied the Westlake's initial motions for severance.

Now before the Court is Mr. Westlake's third motion for severance [ECF No. 89] and Mrs. Westlake's response joining the motion [ECF No. 91]. In support of severance, Mrs. Westlake states that she wishes to testify at trial and that her testimony may inculpate Mr. Westlake. Specifically, she states that she "would testify that she was never told [that Mr. Ellis] was receiving Social Security disability and [that] [Mr. Westlake] instructed her to make the checks payable to Sandra Ellis." ECF No. 91, at 2, n1.

Mrs. Westlake argues that if she and her husband are tried together, she will be forced to choose between her right to testify on her own behalf and her privilege not to testify against her spouse. Mr. Westlake argues that severance is required to protect his right to a fair trial and his right not to testify. Alternatively, Mr. Westlake objects to the introduction of evidence of his communications with his spouse.

When a defendant moves for severance, a district court must first determine whether joinder is proper under Federal Rule of Criminal Procedure 8, which permits joinder of two or more defendants if they are alleged to have participated in the same act or in the same series of acts, constituting an offense. In this case, the defendants are charged with participating in the same act and series of acts constituting theft of government property, and the Court

5

finds that defendants are properly joined. However, even when joinder is proper, Federal Rule of Criminal Procedure 14(a) provides that a court may order severance of defendants or other appropriate relief if it appears that the defendant seeking severance is prejudiced by joinder.

The Court first addresses the issue of spousal privilege. Rule 501 of the Federal Rules of Evidence provides that a claim of privilege is governed by "common law–as interpreted by United States in the light of reason and experience–. . . unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501. In other words, "federal courts follow the federal common law regarding privileges in federal criminal proceedings." *United States v. Espino*, 317 F.3d 788, 795 (8th Cir. 2003).

Federal common law recognizes two separate marital privileges: the marital confidential communications privilege and the adverse spousal testimony privilege. *Id*. (citing *United States v. Bad Wound*, 203 F.3d 1072, 1075 (8th Cir. 2000). For reasons that follow, the Court finds that neither privilege is properly invoked in this case.

**Marital Confidential Communications Privilege**. This privilege applies to communications between spouses, made in confidence, meaning that no third person is present, and the communicating spouse did not intend for the communication to be passed on to others. *See United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992). The privilege extends only to words or acts intended as a communication to the other spouse, and the communication must occur during a time when the marriage is valid under state law and the couple is not permanently separated. *See id*. (citations omitted). "Provided that these requisites are met, a defendant may invoke the privilege to prevent his spouse from testifying as to the content of the protected

communication." *See id*. (citations omitted).

"A widely accepted exception to the marital confidential communications privilege 'permits witness-spouse testimony about confidential communications involving future or ongoing crimes in which the spouses were joint participants at the time of the communications.'" *Id*. (quoting 2 Weinstein's Evidence 505-36 (1991)). The Eighth Circuit has noted:

> The rationale for the 'partners in crime' exception is compelling. We protect confidential marital communications in order to encourage the sharing of confidences between spouses. Where the communications involve the spouses' joint criminal activity, however, the interests of justice outweigh the goal of fostering marital harmony.

*Evans*, 966 F.2d 398, 401 (8th Cir. 1992).

The Eighth Circuit has adopted the partners in crime exception but limits its application to communications regarding "patently illegal activity." *Id*. (citing *United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir.), *cert. denied*, 473 U.S. 907, 105 S.Ct. 353 (1985)("Only where spouses engage in conversations regarding joint ongoing or future patently illegal activity does the public's interest in discovering the truth about criminal activity outweigh the public's interest in protecting the privacy of marriage.").

The United States makes two arguments in opposition to the Westlake's assertion of the marital confidential communications privilege: (1) the marital communication at issue–Mr. Westlake telling Mrs. Westlake to make a payroll check payable to Mrs. Ellis--involved a business matter, which tends to show that it was not intended as a confidential communication; and (2) the partners in crime exception applies, making the privilege inapplicable. The Court finds that both arguments have merit.

Private communications between spouses are generally presumed confidential, but that

presumption may be rebutted by various factors, including the nature of the message and the circumstances under which it was delivered. *See Fowler v. United States*, 352 F.2d 100, 113 (8th Cir. 1965). Here, the communication at issue concerned a payroll check or business transaction that related to facts (specifically, that the check was payable to Mrs. Ellis and signed by Mrs. Westlake) that would become publicly known. Although the public would not necessarily know that Mr. Westlake specifically instructed Mrs. Westlake to make the check payable to Mrs. Ellis, the presumption of confidentiality is generally rebutted as to business-related communications between spouses who are business associates. *See Fours, Inc. v. Miele*, 496 F.2d 809, 813 (2d Cir.1974)(holding that wife was not entitled to assert husband-wife privilege where questions posed to her dealt with business matters that were either not confidential or were intended to conceal facts to prevent execution of judgment).

Furthermore, given that the communication at issue concerned joint criminal activity, concealing payments to Ellis, the Court agrees that the partners in crime exception applies and that Mrs. Westlake's proposed testimony is not prohibited under the marital confidential communications privilege.

**Adverse Spousal Testimony Privilege**. Under this privilege, "an individual 'may be neither compelled to testify nor foreclosed from testifying' against the person to whom he or she is married at the time of trial." *Bad Wound*, 203 F.3d at 1075 (quoting *Trammel v. United States*, 445 U.S. 40, 53, 100 S.Ct. 906, 914 (1980)). The adverse spousal testimony privilege belongs to the testifying spouse, who may waive the privilege without the consent of the defendant spouse. *See Espino*, 317 F.3d at 796 (citing *Trammel*, 445 U.S. at 53, 100 S. Ct. 906).

Here, Mrs. Westlake may be neither compelled to testify nor foreclosed from testifying,

and the decision of whether to testify is hers alone. *See Trammel*, 445 U.S. at 53, 100 S.Ct. at 914). This Court agrees with other courts that have concluded that severance is not warranted merely because a defendant is faced with testifying in her own defense or exercising her privilege against adverse spousal testimony. *See United States v. Dowdy*, 738 F. Supp. 1283, 1286 (W.D. Mo., 1990)("If a defendant may be forced to choose between his or her Fifth Amendment rights and the decision to take the stand, it is certainly fair to compel a defendant to chose between taking the stand and waiving the marital privilege, which is not constitutionally protected."); *United States v. Sasso*, 78 F.R.D. 292, 294 (S.D.N.Y. 1977)(denying severance merely because co-defendant spouse preferred not testify against her husband at a joint trial).

Mrs. Westlake's choice between testifying and asserting her privilege is not a proper basis for severance, and her motion for severance is denied. As for Mr. Westlake's argument that severance is necessary to preserve his Sixth Amendment right to a fair trial and his Fifth Amendment right not to testify, "[t]he mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials, as a codefendant frequently attempts to 'point the finger.' to shift the blame, or to save himself at the expense of the other." *United States v. Lewis*, 557 F.3d 601, 609 (8th Cir. 2009)(citation omitted).

When, as here, defendants are properly joined, "there is a strong presumption for their joint trial, as it 'gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" *Id*. (citing *United States v. Forez*, 362 F.3d 1030, 1039 (8th Cir. 2004)(quoting *United States v. Darden*, 70 F.3d 1507, 1528 (8th Cir.1995)). "This presumption can only be overcome if the prejudice is 'severe or compelling.'" *Id*. (quoting *United States v. Crumley*, 528 F.3d 1053, 1063 (8th Cir.2008). Mr. Westlake has failed to make

9

such a showing, and his motion to sever is denied.

IT IS THEREFORE ORDERED THAT the motions to quash by Defendants Lee E. Ellis and Sandra J. Ellis [ECF Nos. 92, 94] are HELD IN ABEYANCE, and motions to sever by Defendants James P. Westlake and Barbara L. Westlake [ECF Nos. 89, 91] are DENIED.

IT IS SO ORDERED THIS 15TH DAY OF DECEMBER, 2015.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE